UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOSE ANTONIO LEBRON,<br><br>v.<br><br>W. ANDERS, *et al.*,<br><br>*Defendants.* | CASE NO. 7:20-cv-524<br><br>MEMORANDUM OPINION & ORDER<br><br>JUDGE NORMAN K. MOON |

In this action, *pro se* plaintiff Jose Antonio Lebron, a federal prisoner, asserts civil rights claims pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 389 (1971). Lebron names as defendants several Federal Bureau of Prisons ("BOP") staff members, all of whom worked at the United States Penitentiary in Lee County ("USP Lee"), where Lebron was incarcerated at the time of the events in question. He alleges that most of the defendants used excessive force against him in various ways and that one, a nurse, refused him medical care. After review of the record, the Court concludes that the defendants are entitled to summary judgment because Lebron failed to properly exhaust administrative remedies.

## I. BACKGROUND

Lebron alleges the following sequence of events on which he bases his claims under *Bivens*. On the morning of January 24, 2019, Correctional Officer W. Anders and Senior Officer Christian conducted a random body scan on Lebron. After telling him that the scan revealed possible contraband on his person, the officers escorted him to a private area to conduct a visual strip search. Lebron complied with orders by putting his hands on the wall and spreading his feet apart for removal of his restraints, and then by turning to face Christian. When he did so, Christian struck him on the left side of his face and slammed him to the floor, where both

1

officers assaulted him, replaced his restraints, pulled him up from the floor, and escorted him to another area. Again, officers threw Lebron against a wall, punched, and kicked him. Throwing him to the floor, they removed his restraints. Someone yelled, "Stop resisting," Compl. 6, Dkt. 1, and jumped on his back. Officers kicked him in the ribs and head, picked him up by his hair, and threw him into the wall. Two officers held Lebron while another cut and ripped off his clothing, placed him into paper clothes, returned him to restraints, and threw him into a restraint chair.

While he was in the chair, officers kicked him in the chest and punched him in the head repeatedly, placed leg irons on his ankles, and wrapped tight straps around his body so he could not breath. They rolled him in the restraint chair to the Special Housing Unit, punched him in the face four times, and strapped him onto the four-point restraint bed. Lieutenant Bellamy told Lebron that he was going to start filming with a camcorder when the nurse arrived and that Lebron should say he "was alright" and "did not sustain any injuries," or Lebron "would be rec[ei]ving worse." *Id.* at 7. Nurse Parker arrived and "assessed [Lebron's] injuries knowing [he] was not alright and asked if [he] was ok." *Id.* When Lebron said yes (which he did only because he did not want to be assaulted again), Nurse Parker left. An officer with Lieutenant Bellamy punched Lebron in the ribs four times when he refused to smile for a photograph. The officer snapped the picture and then they left.

Lebron remained in four-point restraints for sixteen hours.[1] Every two hours, various officers came in and assaulted him, striking his head, his ribs, and his genitals. He was

---

[1] Defendants' evidence is that during the strip search on January 24, 2019, as Lebron turned to face the officer nearest to him, Lebron struck the officer with his fist. To stop his assaultive behavior, the officers placed Lebron against the wall and then on the ground to safely restrain him again. When the officers tried to put Lebron in ambulatory restraints, Lebron tried to spit on one of the officers. Because of these disruptive behaviors, the officers transported him in the restraint chair and then held him in four-point restraints for several hours until he retained sufficient control over his actions to be released.

humiliated when he urinated on himself. The wrist and ankle restraints were so tight that his hands and feet looked blue for lack of circulation. When officers released Lebron from restraints the following morning, "he was threatened about trying to file any type of grievance." *Id.* at 8.

On two unspecified dates, Lebron told Nurse Parker that he was in pain from his shoulder and chest, but Parker failed to provide medical care. Since the January 24, 2019, incident, Lebron has received medical evaluation, testing, and treatment for shoulder, neck, and arm pain, ankle and wrist scars, and numbness and lack of strength.

The defendants have filed a motion to dismiss, or in the alternative, a motion for summary judgment. Among other things, they argue that Lebron is barred from proceeding with this action because he failed to exhaust available administrative remedies before filing this lawsuit as required under 42 U.S.C. § 1997e(a). Lebron has responded to the motion, making the matter ripe for disposition.

## II. DISCUSSION

According to Rule 12(d), if matters outside the pleadings are presented to and not excluded by the court, a Rule 12(b)(6) motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion. The Court has provided such notice to the parties.

Defendants have submitted various evidentiary materials with their motion, including an investigator's declaration about the use of force incidents on January 24-25, 2019, other documentation related to that investigation, and a declaration by Destiny Spearen, who is the paralegal for the BOP's Consolidated Legal Center that provides legal services for regional BOP facilities, including USP Lee. *See gen.* Mem. Supp. Mot. Dism. Ex. 1 & 2, Canfield Decl. and Spearen Decl., Dkts. 20-1, 20-2. Spearen has investigated LeBron's administrative remedy

3

records and provides details about them, with photocopies of the filings and responses attached. The Court has considered some of the evidentiary materials presented by defendants, and therefore, must treat defendants' motion as a motion for summary judgment.

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).[2] In making that determination, the Court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (*en banc*).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. Instead, the non-moving party "must produce not merely colorable but significantly probative evidence" from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. Am Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990).

In addressing the summary judgment arguments, the Court must hold Lebron's *pro se* amended complaint, "however inartfully pleaded" it may be, "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However,

---

[2] Internal citations, alterations, and quotation marks are omitted throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

Lebron "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. Mere groundless generalizations and unsupported speculations cannot create a genuine issue of fact and are thus insufficient to defeat a summary judgment motion." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992). In response to a motion for summary judgment for failure to exhaust administrative remedies, a bare assertion that is "unsupported by any detail" will not satisfy a prisoner plaintiff's "burden of showing that remedies were unavailable." *Rodrigues v. Hamilton*, 7:20-cv-338, 2021 WL 413530, *6 (W.D. Va. Feb. 5, 2021).

The Prison Litigation Reform Act ("PLRA") requires a prisoner plaintiff to exhaust his available administrative remedies before bringing a civil action in federal court. 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure before filing his § 1983 action. *See Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006) (finding inmate's untimely grievance was not "proper exhaustion" of available administrative remedies under § 1997e(a)). District courts may not "excuse a failure to exhaust." *Ross v. Blake*, 578 U.S. 1174, ____, 136 S. Ct. 1850, 1856 (2016).

The BOP's administrative remedy procedure is well-documented and straightforward, involving these stages: the filing of an informal complaint, the filing of a formal complaint, and two levels of appeal. The first stage of a claim alleging staff misconduct requires the inmate to present his issue of concern "informally to the staff." 28 C.F.R. ¶ 542.13(a). Each Warden has established procedures for inmates at his institution to do so. *Id*.

Second, if an inmate is unable to resolve his complaint informally, the next stage of the claim requires him to file a formal written complaint (an "administrative remedy request") with the institution. To do so, he should obtain and complete "the appropriate form (BP-9)" within twenty calendar days after the incident at issue and return it to his correctional counselor. *Id*. at ¶ 542.14(a), (c)(1), (4). The institutional warden or designee should provide a response.

Third, if dissatisfied with the warden's response to his BP-9 form, an inmate enters the third stage of the remedies procedure: he has two levels of appeal that he may pursue. Initially, he may appeal to the Regional Director within twenty calendar days of the Warden's BP-9 response, using a BP-10 form. If the inmate still is not satisfied with the response he receives, he may appeal the Regional Director's BP-10 response to the Office of General Counsel, using a BP-11 form, within thirty calendar days of the date the Regional Director signed the response. Appeal to the General Counsel is the final administrative appeal.

The parties agree that in the twenty days following the use of force incidents on January 24-25, 2019, Lebron did not file any administrative remedies related to those events. *See gen.* Compl 9, Dkt. 1; Spearen Decl. ¶ 7, Dkt. 20-2. Therefore, he allowed the filing deadline under the BOP grievance procedure to expire without making any effort from Lebron to file a timely formal complaint or otherwise comply with the exhaustion requirement.

On July 30, 2019, Lebron was transferred away from USP Lee. Spearen Decl. at ¶ 3. He is currently confined at USP Hazelton in West Virginia.

Lebron first filed a BP-9 form raising his current claims in early March of 2020, more than a year after the USP Lee use of force incidents. Compl at 9; Spearen Decl. at ¶ 7. That remedy was denied as untimely filed, because Lebron did not submit it within twenty days after the incident at issue. Lebron then filed a BP-10 in mid-March of 2020, asking the Regional

6

Director to overturn the Warden's finding of untimeliness. Compl. at 9. This appeal was denied because Lebron had filed it in the wrong BOP region. *Id.* The response included instructions for Lebron to refile the BP-10 in the correct region, and he did so, in early May of 2020. Spearen Decl. Attach. A, p. 6.

The Regional Director upheld the Warden's finding that the BP-9 form was not timely filed. But the Regional Director also included instructions for Lebron to refile a BP-9 to the institutional level and "provide staff verification of the reason for delay." Spearen Decl. at ¶ 9 and Attach. A, p. 7. Instead of following these directions, however, Lebron appealed the Regional Director's denial of his appeal to the Office of General Counsel in mid-May of 2020.

In July of 2020, the Office of General Counsel rejected the appeal. Compl. at 9. The response instructed Lebron that if staff at USP Lee provided a memorandum explaining that the late filing of the initial BP-9 was not Lebron's fault, then he could resubmit the remedies at the institutional level. ." Spearen Decl. at ¶ 9 and Attach. A, p. 7. Lebron has not obtained such a memorandum or refiled a formal complaint at the institutional level.

Spearen explains that although Lebron's BP-9 and subsequent appeals were denied, because he filed outside the prescribed time limits or to the wrong institutional level, Spearen Decl. at ¶ 10, BOP officials did not ignore his concerns. "[A]llegations of staff misconduct are taken seriously, and [Lebron's] allegations were submitted to the appropriate parties for review and investigation." *Id.* at ¶ 8. Nevertheless, it is undisputed that Lebron did not properly exhaust the remedies as delineated in the BOP procedures.

The defendants have the burden to prove an inmate's failure to exhaust available administrative remedies. *Jones*, 549 U.S. at 216. They have done so here. Now, the burden of proof shifts to Lebron to show that exhaustion occurred or that administrative remedies were

unavailable. *Ross*, 578 U.S. at ___, 136 S. Ct. at 1859; *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011).

"[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). An inmate must exhaust "only those[ ] grievance procedures that are capable of use to obtain some relief for the action complained of." *Ross*, 578 U.S. at ___, 136 S. Ct. at 1859. An administrative remedy is considered unavailable when: (1) "it operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.*

Even liberally construing Lebron's verified Complaint, at the most, Lebron blames his failure to file timely administrative remedies and appeals on an official's verbal threat. As to whether alleged threats by any correctional officer rendered the BOP's remedies "unavailable," courts apply a two-part test from the Eleventh Circuit's decision in *Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008), which has been adopted in several other circuits.[3] *Rodrigues v. Hamilton*, No. 7:20-CV-00338, 2021 WL 413530, at *3 (W.D. Va. Feb. 5, 2021) (citing *Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (adopting the *Turner* test); *McBride v. Lopez*, 807 F.3d 982, 987-88 (9th Cir. 2015) (same); *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) (same). The test requires an inmate to show: (1) subjectively, that "the threat did actually deter the plaintiff inmate from lodging a grievance or pursing a particular part of the process;" and (2) objectively, that "the threat is one that would deter a reasonable inmate of ordinary

---

[3] The Fourth Circuit has not expressly adopted or rejected the Turner test. But nothing prohibits its use and the Court concludes that it is both helpful and appropriate.

8

firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust." *Rinaldi*, 904 F.3d at 268 (quoting Turner, 541 F.3d at 1085).

Lebron asserts that when officers released him from the four-point restraint bed, someone "threatened [him] about trying to file any type of grievance." Compl. 8, Dkt. 1. In his unverified response to the defendants' motion, Lebron states that he "waited to file a grievance through no fault of his own due to safety concerns." Resp. Opp'n 5, Dkt. 24. The Court simply cannot find that these vague references to threats and fears about his personal safety are sufficient evidence that official intimidation prevented Lebron from utilizing the BOP grievance procedures. Lebron does not identify who threatened him or what that individual threatened to do if he filed a grievance about the use of force incidents of which he now complains. He simply states no facts showing that the threat he received was so significant that it would "deter a reasonable inmate of ordinary firmness and fortitude from lodging" a timely formal complaint as the first stage of the required BOP grievance procedures. *Rinaldi*, 904 F.3d at 268. Therefore, the Court cannot find that Lebron has shown that the regular BOP remedy procedures were unavailable to him.

Moreover, the record does not reflect that Lebron took advantage of other administrative remedies offered to him. First, even after he waited a year to initiate the formal grievance, the Regional Director and the Office of General Counsel both instructed Lebron that he could seek a late-filing excuse from USP Lee. They advised him that with if USP Lee staff would agree (in writing) that it would have been unsafe for Lebron to file a BP-9 immediately after the events of January 24-25, 2019, then a BP-9 at USP Lee could be processed normally, even though it was so late. Lebron offers no evidence that he attempted this alternative method of complying with the exhaustion requirements of § 1997e(a).

Second, the BOP grievance procedure itself offers an alternative process for a BOP inmate who fears for his safety in filing a complaint or informal complaint at his facility. In such circumstances, the inmate may file a "sensitive" administrative remedy request directly to the appropriate Regional Director. 28 C.F.R. ¶ 542.14(d)(1). The inmate must clearly mark the word "Sensitive" on the administrative remedy form and explain the reasons for designating the request as sensitive. The Regional Director determines whether to accept the administrative remedy as a sensitive matter and informs the inmate accordingly. Even if the Regional Director rejects the inmate's effort to have the administrative remedy request treated as a sensitive matter, or rejects the form for other reasons, the inmate may then opt to pursue the matter in a new BP-9 with the warden of his institution. Lebron presents no evidence that he attempted to utilize this available remedy.

### III. CONCLUSION

For the reasons stated, defendants' motion for summary judgment, Dkt. 19, is **GRANTED**. The claims in the complaint are **DISMISSED WITHOUT PREJUDICE**.

It is so **ORDERED**.

The Clerk of Court is directed to send this Memorandum Opinion and Order to all counsel of record.

Entered this <u>16th</u> day of September, 2021.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE